UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
DOCKET NO. 2:13-cv-00044-MOC

| | |
|---|---|
| **ROBERT WAYNE HOKE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) MEMORANDUM OF DECISION |
| | ) and |
| v. | ) ORDER |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Judgment on the Pleadings. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

I. **Administrative History**

Plaintiff filed an application for disability insurance benefits, alleging disability beginning October 17, 2010, due to injuries caused by a fall from a tree. Plaintiff's application was denied initially and again upon reconsideration. Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). Plaintiff, who was represented by counsel, appeared and testified at an administrative hearing via video conference before ALJ John S. Lamb on June 29, 2012. After conducting the hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. The Appeals Council denied plaintiff's request for review of the ALJ's decision, making the ALJ's decision

1

the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion that follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456.

## IV.     Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely considered the decision of the ALJ in light of the record, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. "In reviewing

for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.2001) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996)) (internal quotation marks omitted) (first and second alterations in original). After closely reviewing the record before the ALJ, as well as his reasoning, this court finds that substantial evidence supports his decision.

**B. Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

- a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

- b. An individual who does not have a "severe impairment" will not be found to be disabled;

- c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

- d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

- e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b) - (f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

## C. The Administrative Decision

With an alleged onset date of October 17, 2010, the issue before the ALJ was whether plaintiff was disabled between that date through the date of decision, August 17, 2012. At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Administrative Transcript ("Tr.") at 17. At step two, the ALJ found that the following impairments had more than a minimal effect on plaintiff's work-related physical activities and were thus severe: multiple pelvic fractures with history of open reduction/internal fixation and postoperative pain, degenerative disc disease, bilateral knee patellofemoral chondromalacia, and right tarsal tunnel syndrome. Tr. at 17. At step three, the ALJ determined that plaintiff had no impairment or combination of impairments that met or medically equaled any impairments in the regulatory listings. The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform:

> Sedentary work... except he could never climb ladders/ropes/scaffolds; could occasionally climb ramps/stairs and occasionally bend, stoop, crawl, bend orcrouch; and should avoid concentrated exposure to hazards. In the alternative, [the ALJ found] the same RFC, except that [plaintiff] would require a sit/stand option.

Tr. at 24. At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work, which included jobs as a logger, construction worker, heavy equipment operator, and a forklift driver. Tr. at 29, 70-71, 160. The ALJ then found at step five that considering plaintiff's age, education, work experience, and RFC, other jobs existed in the national economy that plaintiff would be able to perform. Tr. at 29. The vocational expert who testified at plaintiff's hearing stated that given these factors, plaintiff was capable of performing several unskilled, sedentary occupations, including surveillance monitor and order clerk in the food and beverage industry. Tr. at 29-30. Accordingly, the ALJ found plaintiff not disabled. Id. at 30.

D.  Discussion

1.  Plaintiff's Assignments of Error

Plaintiff seeks judicial review of the Commissioner's final administrative decision, alleging:

   I.   The ALJ erred in evaluating Plaintiff's credibility regarding his need to sit and recline due to back, hip, and leg pain and numbness; and

   II.  The ALJ erred at Step 5 by relying on vocational expert testimony elicited in response to an incomplete hypothetical question.

Plaintiff's assignments of error will be discussed *seriatim*.

2.  First Assignment of Error: Plaintiff's Credibility

Plaintiff alleges that in formulating the RFC, the ALJ erred in evaluating plaintiff's credibility regarding his need to sit and recline due to back, hip, and leg pain and numbness. Plaintiff claims that the ALJ's determination of his credibility is unsupported by substantial evidence. He further argues that as a result of the ALJ's improper credibility determination, the RFC erroneously failed to incorporate plaintiff's need to recline during the day.

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

In reviewing plaintiff's claim regarding the ALJ's credibility determination, the court notes at the outset that because the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are

5

to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990) (Hyatt III), which held that "[b]ecause pain is not readily susceptible of objective proof…the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating such a subjective complaint was developed by the Court of Appeals for the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). This two-step process for evaluating subjective complaints corresponds with the Commissioner's relevant rulings and regulations. See 20 C.F.R § 404.1529; SSR 96-7p.[1]

The first step requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594. If the ALJ finds such an impairment, he must then proceed to the second step and assess "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595; see also 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p. The term "other relevant evidence"

---

[1] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Craig, 76 F.3d at 595. If the ALJ does not find a claimant's statements to be credible, the ALJ must provide specific reasons supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96–7P; see also Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985) ("credibility determinations…should refer specifically to the evidence informing the ALJ's conclusion").

Here, at the first step of Craig, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. Tr. at 28. The ALJ then determined that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible, noting that, "his testimony as to limitations for sitting is not entirely consistent with medical evidence or with some of his own statements." Id. at 27; see also 20 C.F.R. § 404.1529(c)(4) (noting that such considerations are appropriate: "[w]e will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence"); SSR 96-7P ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record"). The ALJ satisfied the duty of explanation by noting several inconsistencies between plaintiff's testimony about the pain he experienced from sitting, his statements about his ability to carry out other activities, his conservative treatment measures, the statements made by his stepmother in a third-party function report, and the medical record as a whole. Tr. at 26-8.

7

At his hearing, plaintiff testified that he could only sit for about 15 to 20 minutes before his muscles would become stiff and it became "real hard to move when [he tried] to get up." Tr. at 58. Plaintiff also testified that that sitting on harder surfaces caused more stiffness. Tr. at 58. Plaintiff stated that he needed to sit for 90 days after his first accident, but that it "hurt bad," and that he had no choice but to sit. Tr. at 58. Plaintiff also testified that he shifts his weight to the right side of his body when he sits to take the pressure off the left (Tr. at 59) and that he spends most of the day – 80% of the time – in a recliner or lying down. Tr. at 67.

The ALJ found much of plaintiff's testimony about his pain and mobility to be credible, acknowledging that:

> he cannot walk far and his back hurts when he stands for 30 minutes if he can stand that long. He said he is limited in walking, standing and lifting. He cannot go to the ground and pick up anything at all and has to sprawl to get to ground. He can lift 15 or 20 pounds. His hip hurts with any kind of motion. His leg is numb and his foot is asleep with a numb feeling. His left leg and foot stay that way all the time and this makes it impossible to sleep.

Tr. at 27. In explaining why he found plaintiff's assertions regarding his limitations in sitting not fully credible, the ALJ first discussed Plaintiff's reported activities of daily living. Tr. at 27; see 20 C.F.R. § 404.1529(c)(3)(i). The ALJ noted that, though plaintiff could not perform house work or yard work because he could not walk outside for long periods, stoop, lift or bend (Tr. 26), he was able to bathe, dress himself, prepare simple meals, and drive occasionally. Tr. at 26-27, 213-15. The ALJ found it "significant that the claimant is able to care for his child at home, an activity that can be quite physically demanding." Tr. at 26. He concluded:

> Both [plaintiff's] and his stepmother's description of his daily activities are consistent with a capacity for sedentary exertion with the additional postural and environmental limitations I have set forth. These include taking care of his daughter, taking care of personal hygiene, occasional driving, preparing meals and sitting in a recliner.

Tr. at 27. The ALJ also explained his credibility assessment in light of the extensive medical record before him, noting that "while claimant has complained of problems with prolonged sitting, most of his complaints have been for prolonged walking/standing, repetitive heavy lifting and repetitive bending, none of which are required in the performance of sedentary work." Tr. at 27.

In support of his finding, the ALJ discussed the April 2011 treatment note from William M. Ralston, D.O., in which Plaintiff reported that his pain was worse with bending, twisting, lifting, sitting, standing, and walking, but also said that his low back pain was especially worse with standing or walking longer distances. Tr. at 27, 478. The ALJ also discussed the August 2011 advice that Edward Lewis, M.D., gave to plaintiff after administering an epidural steroid injection; Dr. Lewis advised plaintiff to avoid repetitive bending, lifting and twisting activities, but stated that he could otherwise resume normal activity the next day. Tr. at 27, 594. Lastly, the ALJ discussed an April 2012 treatment note, in which Plaintiff told Jessica Ange, M.D., that his pain was aggravated by lying down. Tr. at 27, 532. Acknowledging this medical evidence, the ALJ explained that plaintiff's need to shift positions throughout the day due to back pain was not inconsistent with his finding that Plaintiff could perform sedentary work. Tr. at 27. He noted, "[b]y definition, sedentary exertion work also allows for normal breaks during the workday during which time claimant would be able to change positions…two of the three jobs [the vocational expert] named in response to my hypothetical question would allow the individual to change position for sitting or standing at will." Tr. at 27.

In assessing other relevant medical evidence regarding plaintiff's pain from sitting, the ALJ explained that he found plaintiff's statements about his pain and limitations to be less than credible because plaintiff testified that he uses only conservative treatment measures. Tr. at 28.

9

Those measures include ice, heat, BenGay, prescription and over-the-counter medications, steroid injections, and physical therapy. Tr. at 28. The ALJ properly considered plaintiff's use of such measures in assessing the credibility of his statements regarding his pain level. See Wilson v. Comm'r, Soc. Sec. Admin., No. 97-1674, 1998 WL 647031, at *1 (4th Cir. 1998) (stating that claimant's doctors "recommended only conservative treatment, which does not suggest that his pain is…disabling"); McKenzie v. Comm'r Soc. Sec. Admin., No. 99-3400, 2000 WL 687680, *4 (6th Cir. 2000) (finding that Plaintiff's complaints of disabling pain were "undermined by his non aggressive treatment" which included only medication and chiropractic treatment); Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (finding that conservative treatment consisting of physical therapy, muscle relaxants, heat treatments, and pain relievers contradicted plaintiff's claims of disabling pain). The ALJ also considered medical reports indicating that plaintiff had made significant progress through physical therapy, consistently reported improved or stable symptoms after epidural steroid injections, successfully used a cane to walk long distances or outside his home, and was able to complete daily activities with mild to moderate pain despite experiencing significant pain with increasing time on his feet. Tr. at 28. The ALJ concluded that plaintiff's conservative treatment "has generally been successful in alleviating his symptoms." Tr. at 28.

In sum, the court finds that the ALJ properly gave less weight to Plaintiff's subjective statements about his inability to sit based on his medical records and history, evidence of his daily activities, objective medical evidence of pain, and all other relevant evidence.

Turning now to plaintiff's claims that the ALJ erred in his credibility determination, plaintiff first alleges that the ALJ improperly assessed the evidence of his ability to perform daily activities. Plaintiff argues that the ALJ "rejected" testimony regarding plaintiff's sitting

limitations and erroneously relied on three medical records indicating that plaintiff's pain was aggravated by bending, twisting, lifting, sitting, standing, walking, and lying down, but not sitting. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 7. Plaintiff argues, "[s]imply because Plaintiff complained to his doctors about sources of aggravation other than sitting does not render incredible his testimony regarding his limitations with sitting." Pl's. Mem. at 7. This argument, however, mischaracterizes the ALJ's credibility determination. As this court has stated before, simply because an ALJ does not articulate his consideration of every piece of information in the record does not mean he ignored a crucial fact. See Upchurch v. Colvin, 5:13-CV-669-FL, 2014 WL 4352097 (E.D.N.C. Sept. 2, 2014); Brittain v. Sullivan, No. 91–1132, 956 F.2d 1162, at *6 (4th Cir.1992) ("An ALJ need not comment on all evidence submitted."). Plaintiff similarly claims that the ALJ did not sufficiently consider the "numerous references" in the record indicating his difficulties with sitting. Pl's. Mem. at 7. Plaintiff points the court to various places in the record that do, indeed, reveal testimony and medical records stating that plaintiff has difficulty sitting still for long periods of time. See Pl's. Mem. at 7-8. In doing so, plaintiff puts the same evidence in front of this court that he put before the ALJ and asks it to reach a different conclusion. As explained above, so long as the ALJ's decision was supported by substantial evidence, the court will uphold his decision. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.2001) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996)) (internal quotation marks omitted) (first and second alterations in original). Moreover, many of the references regarding plaintiff's ability to sit that he cites for the court are, in fact, explicitly cited by the ALJ in his decision. See Tr. at 27 (discussing, *inter alia*, plaintiff's inability to attend church because

11

it was painful for him to sit, his need to move a lot, and his testimony that he can only sit for 15-20 minutes at a time). Finally, the ALJ stated in his decision that he considered all of the evidence (Tr. at 15) and the entire record (Tr. at 17). Absent evidence to the contrary, we take him at his word. See Reid v. Comm'r of Soc. Sec., 13-1480, 2014 WL 2958800 (4th Cir. July 2, 2014) (citing Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir.2005)).

After closely reviewing the record before the ALJ, as well as his reasoning, this court finds that substantial evidence supports his decision, which thoroughly addresses plaintiff's testimony, medical reports, and other relevant evidence regarding the discomfort he experiences due to sitting. The fact that plaintiff disagrees with the ALJ's assessment of this evidence does not render the decision improper. Notably, the ALJ did not completely discredit plaintiff's testimony about his limitations related to sitting. In formulating the RFC, he took plaintiff's statements into account and created an RFC that accounted for plaintiff's need to stand and sit at will during the workday. Tr. at 24, 29-30. Because the ALJ's credibility analysis is supported by substantial evidence and accords with the relevant law, the court overrules plaintiff's first assignment of error.

### 3. Second Assignment of Error: Vocational Expert Testimony

Plaintiff bases his second assignment of error upon his first. He argues that because the ALJ did not incorporate any provision regarding plaintiff's alleged need to recline throughout the day into his examination of the vocational expert, her elicited testimony about the number of jobs available to plaintiff was incomplete. Plaintiff argues that in light of his testimony that he spends as much as 80% of the day in a recliner or lying down, the ALJ should have posed a hypothetical question to the vocational expert that included a provision accommodating plaintiff's need to recline. In light of the above analysis and the court's conclusion that the ALJ's credibility determination was based on substantial evidence, the court disagrees with plaintiff's contentions.

The purpose of examining a vocational expert is to assist the ALJ in determining whether there is work available in the national economy that a claimant can perform. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record…and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (internal citations omitted). Here, the ALJ questioned the vocational expert about whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and RFC. Tr. at 29, 71-74. The vocational expert testified that in light of these factors, three unskilled, sedentary occupations existed in significant numbers in the national economy that plaintiff could perform: surveillance system monitor, order clerk, and table worker. She further testified in response to the ALJ's questioning about whether plaintiff would be able to sit or stand at will in the course of these jobs:

> [for] the job of surveillance system monitor[,] a person could sit or stand at will as long as they stayed at the workstation. The order clerk job would also normally allow the person to sit or stand at will unless they became very busy and then they would have to sit for a longer period of time.

Tr. at 30, 73. "While questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record." Russell v. Barnhart, 58 F. App'x 25, 30 (4th Cir. 2003). For the reasons discussed above, the ALJ properly found that Plaintiff's statements about his sitting limitations were not entirely credible. He also determined that it was unnecessary to include a limitation regarding plaintiff's alleged need to recline 80% of the day. The ALJ did, however, question the vocational expert about sedentary jobs with a sit/stand option. Because the ALJ properly presented all credible limitations to the vocational expert when assessing the availability of work that plaintiff could perform, the court overrules the plaintiff's second assignment of error.

### E. Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Perales</u>, 402 U.S. at 401 (internal citations omitted), plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Judgment on the Pleadings will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) the plaintiff's Motion for Summary Judgment (#12) is **DENIED**;

(3) the Commissioner's Motion for Judgment on the Pleadings (#16) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: September 29, 2014

Max O. Cogburn Jr.
United States District Judge